# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JEREMY STAHLUTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:18-CV-775 PLC |
| vs. ) | |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Jeremy Stahlhuth seeks review of the decision by Defendant Social Security Commissioner Andrew Saul denying his application for Supplemental Security Income (SSI) under the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

I.  **Background and Procedural History**

In October 2014, Plaintiff, who was born May 13, 1975, filed an application for SSI alleging he became disabled on October 19, 2014 due to a back injury and depression. (Tr. 88, 161-67) The Social Security Administration denied Plaintiff's claims, and he filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 98-105)

In November 2016, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. (Tr. 62-87) In a decision dated July 6, 2017, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act, since October 26, 2014, the date the application was filed." (Tr. 45-52) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6, 159-60) Plaintiff has

---
[1] At the time this case was filed Nancy A. Berryhill was the Deputy Commissioner of Social Security.

exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff testified that he was forty-one years old, had a GED, and last worked as machinist for an aerospace company in November 2011. (Tr. 67, 69-70) Plaintiff lived with his wife and two children, ages seventeen and twelve. (Tr. 68)

Plaintiff testified that he experienced pain in his neck, left arm, and left hand. (Tr. 81) Plaintiff testified that he underwent a cervical fusion that "didn't take" and he continued to have "very minimal mobility" in his neck. (Tr. 73) In addition, Plaintiff sustained nerve damage, which affected his left hand.[2] (Tr. 75) Plaintiff explained that the "first three fingers on my left-hand side are always asleep" and his "hand clenches up in the mornings." (Id.) He also had numbness in certain "spots in my back" and certain areas of his face. (Tr. 81) Plaintiff was currently taking hydrocodone, chlorthalidone, and tizandine, and he stated that his medications did not cause any side effects. (Tr. 76) Plaintiff was going to begin physical therapy for his left hand later that month and, if "that doesn't improve they want to do surgery on my hand, and then if that doesn't improve going to go through the neck again…." (Tr. 82)

Plaintiff testified that he was able to stand twenty to thirty minutes before having to recline, and he could sit "an hour or two." (Id.) Plaintiff could not lift a gallon of milk with his left hand, which was "dropping things constantly[.]" (Tr. 77) On a typical day, Plaintiff would "warm up my hands, usually I go down the stairs, make something to eat, sit on the…recliner…that's pretty much it until I pick up my son." (Tr. 78) Plaintiff loaded the dish washer, but did not sweep, vacuum, or do laundry. (Tr. 78-79) He was able to climb up and

---

[2] Plaintiff was right-hand dominant. (Tr. 82)

down stairs holding the railing. (Tr. 79) Plaintiff did not go to the grocery store but he went to church on Sundays. (Tr. 78) Although Plaintiff was able to drive, he did not like to drive long distances because he had "a fear of driving….I get real anxious, and stuff like that. So it's more like mentally, nothing physical." (Tr. 69)

Plaintiff began receiving mental health care at Family Care because he was "having depression issues being home all the time. I think it was more like cabin fever." (Tr. 79) He attributed his period of "pretty dark depression" to his injury. (Tr. 80) Plaintiff learned "meditation practices and things of that nature," which helped. (Tr. 80) Plaintiff no longer had difficulty sleeping and he stated that his depression was "better now, now I'm going to [my son's] games." (Tr. 80)

A vocational expert also testified at the hearing. (Tr. 83-87) The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and work experience and the following limitations:

> This individual can lift up to 10 pounds occasionally, stand/walk for about two hours, and sit for up to six hours in an eight-hour work day with no breaks. This individual can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. This individual can occasionally stoop, kneel, and crouch, but never crawl. This individual should avoid unprotected heights and exposure to hazardous machinery.

(Tr. 85) The vocational expert stated that the hypothetical individual could not perform Plaintiff's past relevant work but could perform sedentary, unskilled positions that existed in the national economy, such as the jobs of hand packer and production worker assembler. (Id.) When the ALJ added the limitation to "occasionally handle objects…using the left hand," the vocational expert stated "that precludes all sedentary unskilled work." (Tr. 85-86) The vocational expert explained: "[I]t's my opinion based on job analyses and professional

3

experience that in these assembly type positions particularly at the sedentary level, it requires frequent bilateral use of the hands and fingers." (Id.)

With respect to Plaintiff's medical treatment records, the Court adopts the facts as provided by the parties in their respective statements of facts and responses. [ECF Nos. 28, 29-1, 29-2] The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

### III. Standard for Determining Disability Under the Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. 42 U.S.C. § 423 (a)(1); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 42 U.S.C. § 423(d)(1)(A); See also 20 C.F.R. § 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 416.920; see also McCoy v. Astrue, 648 F.3d 605, 511 (8th Cir. 2011). Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P,

Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(1). Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. Id.; Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012).

**IV.   ALJ Decision**

Applying the foregoing five-step analysis, the ALJ found that Plaintiff: (1) had not been engaged in substantial gainful activity since October 26, 2014; (2) had the severe impairments of "C7 fracture with facet subluxation causing lateral C6-7 foraminal stenosis with left arm radiculopathy, spinal fusion with instrumentation, and obesity" and the non-severe impairments of diabetes and depression; and (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 47-48)

The ALJ reviewed Plaintiff's testimony and medical evidence and determined that, while his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 50) In particular, the ALJ found that Plaintiff's subjective complaints of

5

debilitating pain were inconsistent with his: comments to the consultative examiner; results of an April 2017 physical examination; activities of daily living; noncompliance with medication and medical appointments; and improvement with treatment. (Tr. 50-51)

The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [T]he claimant can lift 10 pounds occasionally, walk/stand about 2 hours and sit about 6 hours in an 8-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel and crouch, but never crawl. He should avoid unprotected heights and exposure to hazardous machinery.

(Tr. 49) At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform his past relevant work. (Tr. 51) However, based on the vocational expert's testimony, the ALJ found that there existed a significant number of jobs in the national economy that Plaintiff was able to perform, including those of hand packer and production worker/assembler. (Tr. 51-52) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 52)

**V.     Discussion**

Plaintiff claims that the ALJ erred in determining his RFC because: (1) the RFC was conclusory and not supported by "some medical evidence"; and (2) the ALJ failed to properly evaluate Plaintiff's credibility. [ECF No. 21] In response, the Commissioner asserts that the ALJ properly evaluated the record as a whole and formulated Plaintiff's RFC. [ECF No. 29]

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012

(8th Cir. 2000)). The Court must consider "both evidence that supports and evidence that detracts from the ALJ's decision, [but it] may not reverse the decision merely because there is substantial evidence support[ing] a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determination are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. RFC

Plaintiff argues the ALJ's decision was not supported by substantial evidence because his RFC assessment was not supported by "some medical evidence." In particular, Plaintiff maintains that substantial evidence did not support the ALJ's finding that he could perform sedentary work because it requires bilateral use of the upper extremities and frequent handling and fingering. [ECF No. 21] Defendant counters that the ALJ "properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluation of the entire record." [ECF No. 29 at 8]

The medical records reflect that, in October 2014, Plaintiff was involved in a motor vehicle accident that caused a "minimal compression fracture of the superior endplate at C7." (Tr. 273) Plaintiff subsequently underwent a "[l]eft foraminotomy and removal of fractured left C7 superior facet and decompression of the left C7 nerve root." (Tr. 270). When Plaintiff

7

followed up with his primary care provider, Nurse Practitioner (NP) Musselman in early November 2014, he reported "numbness of the hands." (Tr. 378) She prescribed hydrocodone-acetaminophen for pain. (Tr. 381) In December 2014, Plaintiff's orthopedic surgeon noted that he was "doing very well." (Tr. 444)

On January 20, 2015, Dr. Ishida performed a consultative examination for Plaintiff. (Tr. 301-03) Based on Plaintiff's self-reporting, Dr. Ishida stated that Plaintiff could hold a coffee cup "with both hands," and could open a jar, hold a skillet, sweep, and button "okay with the right hand, but not with the left hand." (Tr. 301-02) Dr. Ishida observed that the "[r]ange of motion of upper extremities is somewhat limited." (Tr. 302) On the sensory examination, Dr. Ishida wrote:

> [C]ompared with the right side, decreased sensation starts at the left shoulder area gradually diminishing distally. On the anterior aspect, there is marked decrease at the wrist and more marked decrease in the middle of the palm. While thumb and little finger have +1 sensation, fingers two, three, and four plus distal half of the palm has no sensation. He does not feel any tactile sensation nor pinching. On the dorsum otherwise posterior aspect, change in the sensation starts around 5 cm proximal to the wrist. There is some sensation on the thumb and index finger. There is no sensation on the two, three, four fingers and distal half of the dorsum back of the hand.

(Tr. 303) Dr. Ishida diagnosed Plaintiff with "[s]pinal fusion and decreased sensation of the left hand (median nerve distribution)[.]" (Id.)

At a follow-up appointment at Washington University Orthopedics in April 2015, Plaintiff reported "some numbness in his left index, long, and ring fingers in the C7 distribution as well as some weakness of the left upper extremity." (Tr. 440) Dr. Metz noted that Plaintiff had "5- strength in the left deltoid, 4+ strength in the left biceps and triceps as well as wrist extensor and wrist flexor, 4+/5 in the left hand grip and 4+/5 in the left interosseous" and "decreased sensation in the left index, long, and ring fingers." (Id.)

In May 2015, Plaintiff followed up at Washington University Orthopedics. (Tr. 438) Dr. McClendon noted that Plaintiff had "some triceps weakness" and "occasional numbness in a C7 nerve root distribution," and he prescribed Neurontin. (Id.)

When Dr. McClendon examined Plaintiff in June 2015, Plaintiff reported that the Neurontin had "somewhat improved his numbness; however he still has some weakness." (Tr. 397) On examination, Dr. McClendon observed that Plaintiff's left triceps strength was 4+/5 and he had "decreased sensation to light touch in the C7 nerve root distribution." (Id.) Dr. McClendon ordered an EMG/nerve conduction study, which revealed: "subacute/chronic neurogenic changes affecting primarily the C7 nerve root on the left (i.e. subacute/chronic left C7 radiculopathy)" and "a coexistent left median neuropathy at the wrist, which appears electrically very mild in severity, affecting only the sensory nerve fibers on the left." (Tr. 452)

Plaintiff followed up with Dr. Hotchkiss at Washington University Orthopedics in August 2015. (Tr. 395) Dr. Hotchkiss noted Plaintiff "to have 4/5 triceps strength on the left[,]…4/5 wrist flexors on the left, and decreased sensation of the C7 nerve distribution[,]…slightly decreased wrist extensors as well at 4+/5. He is otherwise motor and neuro intact[.]" (Id.)

In January 2016, NP Musselman examined Plaintiff and observed "[s]ensory disturbances left arm has C7 radiculopathy." (Tr. 338) When Plaintiff returned to Washington University Orthopedics in April 2016, he reported "no significant radiculopathy into his left upper extremity." (Tr. 393) His "greatest concern" was "snapping of his fourth and fifth finger when he first wakes up in the morning." (Id.) On physical examination, Dr. Valone observed that Plaintiff had "5/5 strength throughout the bilateral upper extremities. . . . Sensation intact to light touch…tender to palpation over his left fourth and fifth A1 pulleys." (Id.) Dr. Valone

recommended hand therapy for "what appears to be a mild trigger finger in his left fourth and fifth fingers." (Id.)

In July 2016, Plaintiff complained to NP Musselman about "[t]ingling of the…left hand due to previous cervical fx [sic]." (Tr. 309) When he returned to Washington University Orthopedics in September 2016, he complained of neck pain and left hand numbness and tingling. (Tr. 391) Plaintiff informed Dr. Cordell that "he is still having some numbness and tingling into the index, long, and ring fingers of his left hands" and "he feels like he is having some weakness to grip and is dropping things." (Id.) A physical examination revealed that his strength was intact "with the exception of the left triceps at 4/5, wrist flexors at 4+/5, and interossei muscle at 4/5." (Id.) Dr. Cordell also observed that, "[w]ith flexion and extension of his left long and ring fingers, there is a palpable mass consistent with a trigger finger." (Id.) Dr. Cordell recommended physical therapy. (Tr. 392)

In February 2017, consultative physician Dr. Fisher answered interrogatories and completed a medical source statement (MSS) based on Plaintiff's medical records. (Tr. 493-503) Dr. Fisher found that Plaintiff "could use his left upper extremity as the radiculopathy only slightly affected strength and motor functions." (Tr. 497) Dr. Fisher placed no restrictions on Plaintiff's right upper extremity, but he determined that use of Plaintiff's left hand was limited to: occasional fingering, feeling, and reaching overhead; and frequent reaching (non-overhead), handling, and pushing/pulling.[3] (Tr. 500) Dr. Fisher concluded: "The medical evidence does not support the inability to perform fine and gross movements effectively….The medical

---

[3] In response to the ALJ request for clarification as to Plaintiff's limitations from the period of October 19, 2014 through September 22, 2016, Dr. Fisher opined that Plaintiff's left hand was limited to: occasional reaching, handling, fingering, and feeling; and frequent pushing/pulling. (Tr. 510).

10

evidence supports claimant's functional capabilities to work at the light physical exertional level[.]" (Tr. 497)

Plaintiff followed up at Washington University Orthopedics in April 2017. (Tr. 519) Dr. Sinatra noted that Plaintiff "has been doing reasonably well since we last saw him," but he "does continue to complain of some numbness in his left index finger and middle finger as well as some pain on the dorsal aspect of his forearm." (Id.) Plaintiff stated that strength in his left arm had improved "some" with physical therapy but he "occasionally feels that he has some weakness and drops things." (Id.) A physical examination revealed that his left upper extremity "has 5/5 deltoid, biceps 4/5 left triceps, wrist flexor 4/5, wrist extensor 5/5, interosseous 4+/5….On the left upper extremity he does have some numbness over the index finger and middle finger." (Id.) Dr. Sinatra opined that surgical intervention was "unlikely to provide significant long-term benefit." (Tr. 521)

In his decision, the ALJ accepted non-examining, consultative physician Dr. Fisher's opinion that the radiculopathy in Plaintiff's left arm "only slightly affected strength and motor functions" and determined that "the medical evidence did not support that claimant had inability to perform gross and fine movements." (Tr. 49) However, to the extent Dr. Fisher opined that Plaintiff had the ability to perform light exertional work, the ALJ assigned his opinion "little weight" and, giving Plaintiff "the benefit of the doubt in regard to his assertions of pain," found that Plaintiff was limited to sedentary work activities. (Id.)

The ALJ also reviewed the consultative examiner Dr. Ishida's opinion, which stated that Plaintiff "continued to use his upper extremities, including his non-dominant left hand." (Tr. 50) The ALJ also observed that that Plaintiff informed Dr. Ishida that he could: sit "a long time"; walk one block and stand twenty minutes at a time; climb stairs, bend, and squat; and lift items

weighing less than ten pounds. (Id.) Additionally, the ALJ recounted that Plaintiff told Dr. Ishida he could "hold a coffee cup with both hands and could use his right hand to write, open a jar, lift a skillet, handle a broom, and button buttons." (Id.) The ALJ concluded that "[t]hese activities are consistent with the sedentary activities allowed by" the RFC. (Id.) The ALJ assigned Dr. Ishida's medical opinion "little weight" because it was "inconsistent with objective medical testing and findings made after the opinion was given." (Tr. 51)

In regard to the impairments to Plaintiff's upper extremities, the ALJ acknowledged that Plaintiff continued to experience "signs and symptoms of radiculopathy, including some loss of strength, numbness in his left hand, and loss of range of motion of the neck." (Tr. 50) However, the ALJ also observed that Plaintiff "continued to use his upper extremities, including his non-dominant left hand" and, in April 2017, Plaintiff had "5/5 strength in the right and left upper extremity" and "5/5 deltoid, biceps 4/5 left triceps, wrist flexor 4/5, wrist extensor 5/5, [and] interosseous 4+/5." (Id.) The ALJ therefore included in Plaintiff's RFC a limitation to occasionally carrying less than ten pounds, but included no restrictions on fingering or handling. (Tr. 49)

Plaintiff argues that the ALJ erred in failing to include in the RFC limitations on fingering and handling with his left hand. In support of his alleged need for fingering and handling limitations, Plaintiff cites evidence of numbness in his left index and middle finger and decreased strength in his left arm.

A claimant bears the burden of proving his limitations. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Here, Plaintiff did not prove that his left arm and hand were impaired to the extent that it limited his ability to perform sedentary work. To the contrary, Plaintiff's medical records established that, on physical examination, Plaintiff regularly had 4/5 to 5/5

strength in his left arm, and Dr. Fisher opined that Plaintiff was able to "perform fine and gross movements effectively." Furthermore, there are no records of reduced grip strength and no doctor placed restrictions on Plaintiff's use of his hands and/or arms. "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007).

Moreover, the ALJ accommodated Plaintiff's left arm and hand impairment by limiting him to only occasionally carrying less than ten pounds. The Court finds that the medical evidence does not support limitations more extensive than those articulated in the RFC. "The mere fact that working may cause pain or discomfort does not mandate a finding of disability[.]" Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff also argues that the ALJ failed to properly weigh the medical opinion evidence. In determining a claimant's RFC, the ALJ is required to consider the medical opinion evidence of record together with the other relevant evidence. 20 C.F.R. § 404.1527(b). The ALJ must "give good reasons" to explain the weight given to every medical opinion of record, regardless of its source. See 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii). All medical opinions, whether by treating or consultative examiners, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanations; (5) consistency with the record as a whole; (6) specialization; and (7) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

In regard to the consultative examining physician Dr. Fisher, Plaintiff asserts that the ALJ erred in failing to explain his decision to reject Dr. Fisher's limitations on Plaintiff's left hand and assign Dr. Fisher's opinion little weight. Although the ALJ did not specifically address the upper-extremity limitations identified by Dr. Fisher, the ALJ accepted Dr. Fisher's overall finding that Plaintiff "could use his left upper extremity as the radiculopathy only slightly affected strength and motor functions…." (Tr. 48) Significantly, to the extent the ALJ discredited Dr. Fisher's opinion, the ALJ found that Plaintiff's RFC was more, rather than less, limited than Dr. Fisher opined. The Court finds the ALJ provided "good reasons" for the weight he accorded Dr. Fisher's opinion.

Plaintiff also challenges the ALJ's failure to identify the objective medical testing and later findings that were the basis for his decision to assign Dr. Ishida's opinion little weight. The Court agrees that the ALJ provided minimal reasons for discrediting Dr. Ishida's opinion. However, an ALJ's failure to explain the specific weight given to a medical opinion does not necessarily require remand. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Generally, failure to specify weight is harmless if it is clear the ALJ considered the opinion in determining the claimant's RFC. See Baldwin v. Berryhill, No. 4:16-CV-565-NCC, 2017 WL 4260554, at *3 (E.D. Mo. Sept. 26, 2017); Potter v. Colvin, No. 4:12–cv–01002–SPM, 2013 WL 4436247, at *11 (E.D. Mo. Aug. 16, 2013). Based on review of the record, the Court finds that the ALJ's failure to provide specific reasons for the weight he assigned the medical opinion evidence had no bearing on the outcome and, therefore, does not require reversal of the ALJ's decision. See also Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Welsh v. Colvin, 765 F.3d 926, 929 (8th Cir. 2014)) ("[A]n arguable deficiency in opinion writing that had no practical effect on the decision…is not a sufficient reason to set aside the ALJ's decision.").

14

The record contained substantial evidence to support the ALJ's RFC assessment, which properly accounted for his left arm and hand radiculopathy. Although Plaintiff cites evidence that might support a contrary decision, substantial evidence supported the ALJ's RFC determination and, as such, this Court is required to affirm.

C. Credibility

Plaintiff claims the ALJ improperly evaluated the credibility of his subjective complaints.[4] In particular, Plaintiff challenges the ALJ's reliance on Plaintiff's "minimal daily activities." [ECF No. 21 at 6] In response, Defendant asserts that the ALJ properly considered various factors when evaluating the credibility of Plaintiff's subjective complaints. [ECF No. 29]

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall, 274 F.3d at 1218). When evaluating a claimant's subjective statements about symptoms, the ALJ must "give full consideration to all of the evidence presented relating to subjective complaints," including a claimant's work history and observations by third parties and physicians regarding: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." Polaski v. Heckler, 739 F.2d 1320, 1322

---

[4] The SSA issued a new ruling, effective March 28, 2016, that eliminates the use of the term "credibility" when evaluating a claimant's subjective statement of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (SSA Oct. 2017). The factors to be considered in evaluating a claimant's statements, however, remain the same. See id.; Schmidt v. Berryhill, No. 4:17 CV 2375 CDP, 2019 WL 339634, at *3 n.4 (E.D. Mo. Jan. 28, 2019). Because the ALJ's decision in this case was issued after March 28, 2016, SSR 16-3p applies to this matter.

(8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also SSR 16-3p, at 2017 WL 5180304, at *11.

In assessing Plaintiff's credibility, the ALJ considered Plaintiff's noncompliance with medications and medical appointments. (Tr. 50) Plaintiff's primary care provider, NP Musselman began noting Plaintiff's noncompliance with medications and failure to present appointments in December 2014, just weeks after Plaintiff's car accident and back surgery. Plaintiff's treatment records reveal that NP Musselman noted Plaintiff's noncompliance with his medications in: November and December 2014; July 2015; and January, May, and July 2016. She noted Plaintiff's failure to present for his regular visits in: November and December 2014; April and July 2015; and January, May, and July 2016. "A failure to follow a recommended course of treatment…weighs against a claimant's credibility." Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).

The ALJ also found that Plaintiff's activities of daily living undermined his claims of disabling pain. Specifically, the ALJ noted that Plaintiff: "does some household chores and cooking," "drives his son to school," "took a recent trip to a lake to visit family," "attend[s] his son's soccer games," and "goes out to visit family and attends church." (Tr. 49-50) Although not discussed by the ALJ, Plaintiff informed NP Musselman in November 2015 that he was "running/walking 1 ½ miles once a week and works out 2 times a week." (Tr. 342) An ALJ may discount a claimant's subjective complaints of disabling impairment if they are inconsistent with his activities of daily living. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013).

Finally, the ALJ found that "the record shows that the claimant has had improvement in his symptoms with use of medications." (Tr. 51) In December 2014, NP Musselman noted that

Vicodin controlled Plaintiff's pain, and in June 2015, Plaintiff reported that Neurontin helped his radiculopathy. In April 2017, Plaintiff stated that physical therapy had helped him recover some strength in his left arm. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)).

The Court finds that the ALJ considered Plaintiff's subjective complaints on the basis of the entire record and set out a number of inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Plaintiff's subjective complaints is supported by "good reasons and substantial evidence," the Court defers to his determination. See Gonzales, 465 F.3d at 894.

## VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of October, 2019